### JOHN P. THOMPSON *et al. vs.* THOMAS DYER.

#### PROVIDENCE—JULY 13, 1903.

PRESENT: Stiness, C. J., Douglas and Blodgett, JJ.

(1) *Replevin. Sales. Mortgages.*

A. had a contract with B. to make carriages for A. The money was furnished by C., who held mortgage bonds of A. The time for the completion of the work having expired, A. demanded security of B. for the money he had paid, and a bill of sale of all the property pertaining to the contract was given by B. to A. A. transferred this bill of sale to C., as mortgagee, September 20, 1901. September 17, 1901, A. brought suit against B., attaching its property, and on September 21 removed the property covered by the bill of sale to a shop which C. had secured. B. attached the property covered by its bill of sale September 23, and on the same day C. brought replevin:—

*Held*, that C. was the equitable, if not the legal, owner of the property, the payments showing a consideration for the bill of sale, and as between the parties it was valid.

*Held*, further, that, taking the bill of sale to be a mortgage, it was still good between the parties, although unrecorded; and having been transferred, C. was a mortgagee in possession.

*Held*, further, that C. as mortgagee in possession was entitled to maintain replevin, and was not restricted to an order of sale according to the statute.

(2) *Pleading. Verdicts.*

In an action of replevin, where defendant pleads title in another, a verdict that the property was in the plaintiffs is responsive to the plea, although it omits the converse of the finding—that the property was not in the party set up as owner in the plea—and the verdict will stand.

REPLEVIN. Heard on petition of defendant for new trial, and petition denied.

STINESS, C. J. The plaintiffs sue in replevin for certain property taken by the defendant, as deputy sheriff, on attachment as the property of James McEwen, in whom the defendant pleads title.

(1)    The substantial facts are that McEwen had a contract with the Baldwin Motor Company to make carriages for him, doing business as the Porto Rico Transportation Company. These carriages were to be shipped to Porto Rico, to be used under a franchise secured by McEwen. The money for the enterprise was furnished by the plaintiffs, who held mortgage bonds of McEwen.

The time for the completion of the work having expired, or nearly so, McEwen demanded security of the Baldwin Company for the money he had paid. A bond was talked of, but it was finally agreed that the Baldwin Company should give him a bill of sale of all the property pertaining to the contract; and it did so, specifying the separate parts. The bill of sale was dated September 13, 1901. McEwen transferred this bill of sale to the plaintiffs, as mortgagees, September 20, 1901.

On September 17, 1901, McEwen brought suit against the Baldwin Company, attaching its property, and on September 21, 1901, he removed the property covered by the bill of sale to a shop in Olneyville which the plaintiff, Thompson, who was acting as trustee for the bondholders, had secured.

The Baldwin Company attached the property now in suit, covered by their bill of sale, September 23, 1901, and on the same day this suit in replevin was brought. A verdict having been rendered for the plaintiffs, the defendant asks for a new trial, mainly on the ground that the plaintiffs have not shown title.

The facts as stated above show that the plaintiffs were the equitable, if not the legal, owners of the property in question, having furnished the money for it; and that McEwen was the agent in having the carriages built, though the contract was in his name. Also that they had, apparently, paid probably a full price for what the Baldwin Company had done, as their payment, according to checks and receipts produced and admitted, amounted to $5,255.

These payments show a consideration for the bill of sale given to McEwen by the Baldwin Company, the same that attaches to any mortgage which is given as security for a debt.

The payments had been made, the work was not completed. Security was demanded and given. As between the parties, and none others are involved in this litigation, it was valid. It was a delivery, *pro tanto*, of what the Baldwin Company had agreed to furnish.

The defendant claims that it was in effect a mortgage. We do not see that this is necessarily so. While it was given as security, it was security by predelivery, so that it might not be taken for the debts of the Baldwin Company. It was upon a new consideration, that the company might go on and finish the work. But if we take it to be a mortgage, no substantial right is changed. The defendant claims that, under Pub. Laws cap. 614 (1899), it was void as to third parties.

The statute provides that an unrecorded mortgage is good as between the parties, and the party in whose suit the property was attached by the defendant was the maker of the bill of sale or mortgage. A sheriff making an attachment is not a party within the meaning of the statute, but the party at whose suit property is attached is the one to be considered. As a mortgage, therefore, it was good as against the Baldwin Company. It was transferred to the plaintiffs before the attachment. The plaintiffs at that time were mortgagees in possession. No fraud or improper conduct on their part is shown. No such issue is made by the pleadings. There is no condition in the bill of sale that the Baldwin Company should retain possession for completing the work. On the contrary, the bill of sale implies the contrary by giving the grantee the "use of all drawings and patterns, and the use of all patent rights necessary for the completion of the three busses," etc. It is true that there was an oral agreement that the Baldwin Company should finish the work, but this was not done. McEwen attached the shop of the company, and, finding the articles specified in the bill of sale, he turned them over to the plaintiffs. It is argued that this attachment was a scheme on his part to get possession of the property now in suit. If the question

was in any way raised at the trial, we must infer from the verdict that it was not so found. If it was not so raised, it cannot be raised on this petition. In either view, the plaintiffs appear to be the mortgagees in possession. Certainly McEwen was not the owner, and the plea of title in him fails. The property was clearly in the possession of the plaintiffs, and could not be attached as the property of McEwen. When so taken, the plaintiffs had the right to replevy it. The defendant was not entitled to the request for instruction, made by him and granted, to the effect that the mortgagee cannot take from the attaching officer mortgaged personal property attached as the mortgagor's property under the statute, but should apply for an order of sale according to the statute. Other requests to the same general effect were made and granted. These requests, however, overlook the fact that the statute applies only to property in the possession of the mortgagor. The charge was more favorable to the defendant than he was entitled to ask. The verdict of the jury was not contrary to, but according to, the evidence. The right of possession was shown to be in the plaintiffs and not in McEwen.

(2)     The defendant takes the point that the verdict was not responsive to the plea of property in McEwen because it stated that it was not in *defendant* (Dyer). It does not appear that any objection to the form of the verdict was taken at the trial. It was a finding that the property was in the plaintiffs. That was enough to cover the issue, and was responsive to a material part of the defendant's plea. The converse of the finding, that the property was not in McEwen, as set up in the plea, while customary, is not so important as to vitiate the verdict, otherwise rightly given.

Other objections are made, but as the controlling point in the case was rightly decided we need not refer to them.

The petition for a new trial is denied.

*James J. McCabe*, for plaintiffs.

*Warren R. Perce, Barney & Lee and Howard A. Lamprey*, for defendant.